IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

_____

MELANIE B.,                        )
                                   )
    Plaintiff,                     )
                                   )
v.                                 )        No. 25-cv-1133-TMP
                                   )
FRANK BISIGNANO,                   )
COMMISSIONER OF SOCIAL             )
SECURITY,                          )
                                   )
    Defendant.                     )
                                   )

_____

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**
_____

On June 6, 2025, Melanie B. ("Plaintiff") filed a written request seeking judicial review of a social security decision on behalf of her late husband, James B. ("Decedent").[1] (ECF No. 1.) Plaintiff seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying Decedent's application for Title II disability insurance benefits.[2] (ECF Nos. 1, 17.) For

_____

[1]After the parties consented to the jurisdiction of a United States magistrate judge on July 31, 2025, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 13.)

[2]Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the following reasons, the decision of the Commissioner is AFFIRMED.

## I.  BACKGROUND

Decedent applied for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, on July 18, 2019. (ECF No. 9-3 at PageID 103.) His claims were denied initially and on reconsideration on the basis that he was engaged in disqualifying substantial gainful activity. (Id.) Decedent requested a hearing before an administrative law judge ("ALJ"), and ALJ John Peebles, in a February 2022 decision, found the Decedent was not engaged in substantial gainful activity and sent the matter to the state Disability Determination Service for a medical determination to be made regarding his eligibility for disability insurance benefits. (Id. at PageID 86.) The state agency developed the medical record and again found that the Decedent was not disabled in its initial and reconsideration decisions. (Id. at PageID 103.) Decedent once again filed a written request for a second hearing, which was held telephonically on July 25, 2024, before ALJ William Hogan.

At the time of the second hearing, the Decedent was intubated and on life support. (ECF No. 17 at PageID 2976.) His wife, Plaintiff, testified on his behalf. (Id.) Decedent unfortunately died later that day. (Id. at PageID 2984.) Because of this, prior to ALJ Hogan's decision, Plaintiff was substituted as the party.

- 2 -

(ECF No. 19 at PageID 2992.) Following the second hearing, ALJ Hogan issued a partially favorable decision in August 2024, finding the Decedent was disabled and entitled to benefits from April 12, 2014, through May 30, 2015, but that he medically improved and was not disabled after May 31, 2018, through his date last insured, June 30, 2018. (ECF No. 9-3 at PageID 104.)

The Appeals Council granted Plaintiff review and issued its own decision on April 15, 2025. (ECF No. 9-2 at PageID 22, 29.) In its decision, the Appeals Council partially adopted ALJ Hogan's findings. (Id. at PageID 22-23.) It did not adopt ALJ Hogan's finding that Decedent was entitled to benefits because his disability ended more than twelve months before the application date, which was July 18, 2019, but otherwise adopted his findings.[3] (Id. at PageID 22-23, 27 (citing 20 CFR §§ 404.315(a)(3), 404.320(b)(3) and 404.621(c)).) The adopted findings include ALJ Hogan's residual functional capacity ("RFC") findings, conclusion that the Decedent was disabled from April 12, 2014, through May 30, 2015, but that his disability ended May 31, 2015, and finding that Decedent remained not disabled through his June 30, 2018 date last insured. (Id. at PageID 22-23, 27.) The Appeals Council's

---

[3]Plaintiff does not dispute the Appeals Council's finding that Decedent is not entitled to social security benefits for the period between April 12, 2014, and May 30, 2015, because his disability ended more than twelve months before he applied for benefits. See 20 CFR § 404.315(a)(3).

decision is the agency's final decision subject to judicial review. 20 C.F.R. § 404.981.

In its decision, the Appeals Council considered the August 7, 2024 decision of ALJ Hogan, which, in the adopted part of the decision, considered the record and the testimony given at the second hearing, then used the Act's required five-step analysis to conclude that Decedent was disabled from April 12, 2014, through May 30, 2015, and was not disabled from May 31, 2015, through June 20, 2018, for the purposes of receiving Title II benefits. (ECF No. 9-2 at PageID 22, 9-3 at PageID 103, 116-17.) The Appeals Council noted that Decedent last met the insured status requirements of the Act on June 30, 2018, and that he had not engaged in substantially gainful activity since his alleged onset date, April 12, 2014. (ECF No. 9-2 at PageID 25.) The Appeals Council also accepted ALJ Hogan's finding that Decedent had the following severe impairments, which significantly limited his ability to perform basic work activities: hypertrophic obstructive cardiomegaly/ischemic heart disease; cardiac arrhythmias; status post-double bypass surgery; hypertension; status post-thyroidectomy; thyroid gland mass disorder; coronary artery disease; hyperlipidemia; GERD (gastroesophageal reflux disease); Barret's esophagus; colon polyps; and obesity.[4] (Id.) The Appeals

---

[4]Plaintiff notes in her brief that "ALJ [Hogan] incorrectly included hypertrophic obstructive cardiomegaly as a severe

- 4 -

Council concluded that Decedent did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Id.)

Next, the Appeals Council adopted ALJ Hogan's reasoning and finding that

> [f]rom April 12, 2014 through May 30, 2015, [Deccedent] had the residual functional capacity to perform light work as defined in 20 CFR 404. l 567(b) except he was able to lift and/or carry 20 pounds occasionaly and [10] pounds frequently. He was able to stand and/or walk (with normal breaks) 6 hours in an 8-hour workday and sit (with normal breaks) 6 hours in an 8-hour workday. He could occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; frequently balance and stoop; occasionally crouch; never kneel or crawl. He had to avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, fumes, odors, dusts, gases and poor ventilation. He could not tolerate exposure to hazards. He needed to leave work after working one-half a day twice per week.

(Id. at PageID 25-26.) To reach this conclusion, ALJ Hogan first determined whether there were underlying medically determinable physical or mental impairments that could reasonably be expected to produce Decedent's pain or symptoms, then evaluated the

---

impairment from May 12, 2014. Decedent was actually diagnosed with that upon echocardiogram examination February 8, 2017, occasioned by increasing chest pain, shortness of breath, and exhaustion. This extra considered diagnosis does not affect the Appeals Council's decision that Decedent did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (See ECF No. 9-2 at PageID 25.)

intensity, persistence, and limiting effects of Decedent's symptoms to determine the extent to which they limited Decedent's work-related activities. (ECF No. 9-3 at PageID 108.) ALJ Hogan found that Decedent's medically determinable impairments could be reasonably expected to cause his symptoms and that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were generally consistent with the evidence from April 12, 2014, through May 30, 2015. (Id. at PageID 108-09.)

ALJ Hogan noted that, "[c]onsistent with his alleged onset date of disability, in April 2014, [Decedent] was hospitalized after presenting with symptoms that included chest pain, shortness of breath and lightheadedness." (Id. at PageID 109.) During that hospitalization, Decedent "underwent a coronary artery bypass x2[,]" and was diagnosed with left main coronary artery disease, intraaortic balloon, hypertension, and GERD. (Id.) At a primary care follow up the next month, Decedent was further diagnosed with hyperlipidemia. (Id.) By November of 2014, he was still diagnosed with coronary artery disease, hypertension, hyperlipidemia and GERD. (Id.) Additionally, Decedent reported symptoms including shortness of breath, chest pain, dizziness and body aches, and alleged that he had problems with most physical activities. (Id.) He also stated that he had difficulty completing tasks and performing activities of daily living, such as dressing and

- 6 -

bathing. (Id.) At the July 2024 hearing, Plaintiff testified that Decedent experienced chest pain, fatigue, and shortness of breath. (Id.) She also stated that he needed to lie down to rest during the day and that, prior to his date last insured, he had to go home from work at least twice per week after working only four to five hours. (Id.) ALJ Hogan found that the Decedent's "history of coronary artery disease with double bypass surgery at the time of his alleged onset date of disability supports his allegations of being unable to work at that time, and until mid-2015." (Id.)

Next, the Appeals Council found that Decedent "likely did have past relevant work during the relevant period prior to his date last insured but was not able to perform this work on a regular and continuing basis during the period from April 12, 2014 to May 30, 2015[.]" (ECF No. 9-2 at PageID 26.) It notes that Decedent was "self-employed as an auto mechanic through July 23, 2019, both before and after his alleged disability onset date[.]" (Id.) After stating that during this time period, Decedent was a younger individual age eighteen to forty-nine and had at least a high school diploma, the Appeals Council concluded that between April 12, 2014, and May 30, 2015, Decedent's acquired job skills were not transferable to other work within his RFC and that there were not jobs existing in significant number in the national economy that Decedent could have performed. (Id.) Although it found that Decedent was disabled from April 12, 2014, to May 30, 2015,

- 7 -

the Appeals Council did not adopt ALJ Hogan's finding that Decedent was entitled to Title II benefits during this time. (Id. at PageID 27, 29.) It stated that "[b]ecause [Decedent's] disability ended more than 12 months before he filed his application on July 18, 2019, he was not entitled to a period of disability and disability insurance benefits[.]" (Id. at PageID 29 (citing 20 CFR 404.315(a)(3), 404.320(b)(3), 404.621(c).)

The Appeals Council next considered the period between May 31, 2015, and June 30, 2028, Decedent's date last insured. It stated that as of May 31, 2015, medical improvement occurred that was related to Decedent's ability to work. (Id. at PageID 27.) Because of this, Decedent's RFC increased. (Id.) From May 31, 2015, through June 30, 2018, he

> had the residual functional capacity to perform light work as defined in 20 CFR 404. l 567(b), except he was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. He was able to stand and/or walk (with normal breaks) 6 hours in an 8-hour workday and sit (with normal breaks) 6 hours in an 8-hour workday. He could occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; frequently balance and stoop; occasionally crouch; never kneel or crawl. He had to avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, fumes, odors, dusts, gases and poor ventilation. He could not tolerate exposure to hazards.

(Id.) Effectively, the Appeals Council found that Decedent no longer "needed to leave work after working one-half a day twice per week." (Id. at PageID 26.) The Appeals Council adopted ALJ Hogan's rationale as to this finding. (Id. at PageID 27.) While

- 8 -

ALJ Hogan found that Decedent's medically determinable impairments could reasonably be expected to produce the alleged symptoms during this period, he found that Decedent and Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (ECF No. 9-3 at PageID 112.) ALJ Hogan stated that "by early May 2015, cardiology notes showed that the [Decedent] reported feeling well, and that he was back to working as a mechanic, 12 hours per day, and lifting heavy items . . . [and] denied any chest pain or shortness of breath while working." (Id. at PageID 111-112.) His cardiologist noted that he was doing well symptomatically with respect to his coronary artery disease, his hypertension was under moderate control, and his lipid levels were excellent. (Id. at PageID 112.) These facts, ALJ Hogan determined, are evidence of medical improvement by May 31, 2015. (Id.)

ALJ Hogan further noted that Decedent continued to work twelve-hour days through his date last insured. (Id.) In June 2017, Decedent complained of occasional shortness of breath and chest pain but was able to continue his work as a mechanic and could lift up to the weight of a tire. (Id. at PageID 113.) He was prescribed medication for these symptoms, and medical notes reflected that his conditions were stabilized with that medication. (Id.) Although he experienced some shortness of breath

- 9 -

and fatigue later in 2017, provider notes showed that these symptoms were stable, and that Decedent was able to continue working twelve-hour days into 2018. (Id.) ALJ Hogan noted that a "late June 2018 nuclear stress testing was negative for ischemia and infarct[,]" the Decedent's "[g]lobal left ventricular systolic function was normal, with an ejection fraction of 61%[,]" he showed "no evidence of left ventricular dilation and [his] wall motion was normal." (Id.) ALJ Hogan concluded that "[t]his unremarkable study, as well as the [Decedent's] report of working 12-hours per day in what appears to have been a physically taxing occupation, are inconsistent with the statements about the intensity, persistence, and limiting effects of the claimant's symptoms." (Id. at PageID 113-14.)

Finally, the Appeals Council determined that "[b]eginning May 31, 2015, through June 30, 2018, the date last insured, considering the [Decedent's] age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy that the [Decedent] could have performed[.]" (Id. at PageID 28.) It ultimately concluded that "[b]ased on the application filed on July 18, 2019, the [Decedent] was and is not entitled to a period of disability or disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act." (Id. at PageID 29.)

## II.  ANALYSIS

## A.   Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which they were a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rollins v. Comm'r of Soc. Sec., No. 24-1180, 2025 WL 2710577, at *3 (W.D. Tenn. Sept. 23, 2025). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)); Moats v. Comm'r of Soc. Sec., 42 F.4th 558, 561 (6th Cir. 2022).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir.

- 11 -

1984)); *see also* <u>Foltz obo R.B.K.F. v. Comm'r of Soc. Sec.</u>, No. 23-3362, 2023 WL 7391701, at *3 (6th Cir. Nov. 8, 2023). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." <u>Barker v. Shalala</u>, 40 F.3d 789, 794 (6th Cir. 1994) (quoting <u>Smith v. Sec'y of Health & Hum. Servs.</u>, 893 F.2d 106, 108 (6th Cir. 1989)); <u>Marquitta B. v. Comm'r of Soc. Sec. Admin.</u>, No. 23-cv-1276, 2025 WL 959946, at *8 (W.D. Tenn. Mar. 31, 2025). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. <u>Ulman v. Comm'r of Soc. Sec.</u>, 693 F.3d 709, 713 (6th Cir. 2012) (citing <u>Bass v. McMahon</u>, 499 F.3d 506, 509 (6th Cir. 2007)); <u>see also</u> <u>Floyd v. Comm'r of Soc. Sec.</u>, No. 23-2036, 2024 WL 3103757, at *1 (6th Cir. June 24, 2024). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 528 (6th Cir. 1997); <u>Crum v. Sullivan</u>, 921 F.2d 642, 644 (6th Cir. 1990); <u>see also</u> <u>Robbins v. Comm'r of Soc. Sec.</u>, No. 24-3201, 2024 WL 4603964, at *4 (6th Cir. Oct. 29, 2024).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Id. § 423(d)(2). Under the Act, the claimant bears the ultimate burden of establishing entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011); Dameon W. v. O'Malley, 24-cv-1072, 2025 WL 880255, at *5 (W.D. Tenn. Mar. 21, 2025). The initial burden is on the claimant to prove they have a disability as defined by the Act. Napier v. Comm'r of Soc. Sec., 127 F.4th 1000, 1003 (6th Cir. 2025) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Napier, 127 F.4th at 1003; Born, 923 F.2d at 1173;

- 13 -

see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See id. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled.

On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See id. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of "not disabled" must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, the ALJ must proceed to the fifth step, where they determine whether the claimant can perform other work existing in significant numbers in the national economy.

- 14 -

See id. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2).
Further review is not necessary if it is determined that an
individual is not disabled at any point in this sequential
analysis. Id. § 404.1520(a)(4).

C.     **Substantial Evidence Supports ALJ Hogan and Appeals Council's
       Finding that Decedent Could Perform Light Level Work Between
       May 31, 2015, through June 30, 2018**

Plaintiff argues that Decedent was unable to meet the demands
of light level work during the period from May 31, 2015, to June
30, 2018. (ECF No. 17 at PageID 2986.) She states that there is a
lack of evidence for ALJ Hogan and Appeals Council's conclusion,
noting that there are no medical opinions or prior agency medical
opinions. (Id. at PageID 2987.) She asserts that due to
"extraordinary delay" in this case, "the only person who could
resolve the contradictory accounts on key issues, [Decedent], was
never able to explain what had actually happened." (Id. at 2984.)
Plaintiff lists abnormal symptoms or medical findings contained in
the Decedent's medical record, including shortness of breath in
July 2015, an echocardiogram performed in February 2017 showing
severe asymmetric septal hypertrophy, shortness of breath and
fatigue in October and November 2017, and a June 2018 opinion from
Decedent's cardiologist stating that his shortness of breath was
attributable to his severe hypertrophic obstructive cardiomyopathy
and his coronary artery disease. (Id. at 2987-88.) Plaintiff then
states that

- 15 -

> the only other evidence supporting or not supporting the residual functional capacity findings for a full range of light work is the testimony of [Plaintiff] taken in a hospital bathroom shortly before Mr. Butler died . . . Nothing in her testimony suggests any ability to perform light-level work on a forty-hour per week basis. Rather, she describes her late husband as doggedly determined to keep working as a service station owner/operator and mechanic but failing in that effort.

(Id. at 2988.)

In his brief in opposition, Defendant argues that there is substantial evidence in support of the RFC finding of ALJ Hogan and Appeals Council. (ECF No. 19 at PageID 2994.) He acknowledges that prior to May 2015, Decedent was disabled and unable to work. (Id.) However, he notes that Decedent medically improved in May 2015, reported feeling well, and was back to working twelve-hour days and lifting heavy objects. (Id.) Defendant argues that although Plaintiff takes issue with the lack of medical opinions in the case, the "Sixth Circuit has repeatedly and consistently held that it is the ALJ's duty to assess a claimant's RFC based on all evidence, medical and non-medical, and the ALJ's decision need not be based on a medical opinion." (Id. at PageID 2996 (citing Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013); Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 157 (6th Cir. 2009); Ford v. Comm'r of Soc. Sec., 114 F. App'x 194, 197-98 (6th Cir. 2004)) (also citing Shepard v. Comm'r of Soc. Sec., 705 F. App'x. 435, 442-43 (6th Cir. 2017)). Responding to Plaintiff's assertion that the testimony and statements of Decedent became vital in the

- 16 -

absence of medical opinions, Defendant points to multiple statements from Decedent that he was working twelve-hour days and lifting heavy objects or car tires. (Id.) Defendant argues that although Decedent did have complaints about cardiac symptoms during the relevant period, he continued to report working twelve-hour days. (Id. at 2997.) Defendant states that by pointing to contrary evidence to challenge the evidence relied upon by ALJ Hogan and Appeals Council, Plaintiff is inviting the court to reweigh the evidence, which is not its role. (Id.)

The Commissioner, not the court, has a duty to weigh the evidence. Walters, 127 F.3d at 528; Crum, 921 F.2d at 644; see also Robbins, 2024 WL 4603964, at *4. Therefore, the court here may not reevaluate the evidence presented; rather, the court is to evaluate whether there is substantial evidence supporting the Commissioner's decision. Barker, 40 F.3d at 794 (quoting Smith, 893 F.2d at 108; Marquitta B., 2025 WL 959946, at *8). Here, the Defendant points to Decedent's own statements about his ability to work and what that work entailed, while the Plaintiff counters with other statements and tests showing cardiac symptoms. ALJ Hogan and Appeals Council were "not required to base [their] determination[s] on a medical opinion[.]" Rudd, 531 F. App'x at 728; Bryson v. Comm'r of Soc. Sec., No. 3:20-cv-00667, 2022 WL 1134292, at *5 (W.D. Ky. Feb. 2, 2022). Plaintiff "did not attempt to overcome the demanding substantial-evidence test" but rather

cited competing evidence. Robbins, 2024 WL 4603964, at *5. The evidence cited by ALJ Hogan and Appeals Council is relevant and "a reasonable mind might accept [it] as adequate to support a conclusion." Richardson, 402 U.S. at 401; Moats, 42 F.4th at 561. "Because substantial evidence supported [ALJ Hogan and Appeals Council's] findings, we must uphold them." Robbins, 2024 WL 4603964, at *5.

Additionally, as to Plaintiff's argument that there was "extraordinary delay" in this case, the court has found no record of dilatory conduct on the part of the agency. While it is certainly unfortunate that Decedent died before this matter was resolved, ALJ Hogan and Appeals Council still had enough evidence on which to base their decision, and that decision is AFFIRMED.

### III. CONCLUSION

For the above reasons, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

May 27, 2026
Date

- 18 -